**FIDELITY SOUTHERN FIRE INSUR-
ANCE COMPANY, Appellant,**

v.

**T. B. CROW et ux., Appellees.**

No. 4336.

Court of Civil Appeals of Texas.

Waco.

May 6, 1965.

Rehearing Denied May 27, 1965.

Bryan & Patton, Julietta, Jarvis, Houston, for appellant.

C. Wayne Holder, Freeport, for appellees.

TIREY, Justice.

Plaintiff brought this action on a Texas Standard form insurance policy with Physical Loss Form Endorsement issued by the Fidelity Southern Fire Insurance Company covering the dwelling of plaintiff for damages under the provisions of such policy and endorsement arising out of Hurricane "Carla" of September 9, 10, and 11, 1961. The insurance policy, together with the Physical Loss Form Endorsement provides coverage for "all risks of physical loss" to the dwelling, building or structure described in the face of the insurance policy except specific losses excluded under Section II of the endorsement. Plaintiff sought damages under such policy and endorsement as a result of wind and wind driven rain entering the dwelling of the appellee from Hurricane Carla. In paragraphs 4, 5 and 6 of plaintiff's trial amendment, we find the following allegations:

"IV. That on or about September 11, 1961, a hurricane called 'Carla', having heretofore developed struck the Gulf Coast of the State of Texas, the eye thereof passing south and west of Freeport, Texas, at Matagorda and Port O'Connor; that the wind and wind driven rain created by the aforesaid Hurricane Carla, created openings in the roof and sides of the insured's premises above, and, as a direct result of said wind and rain driven thereby, the premises aforesaid sustained damages in the total amount of $7,832.00; that said damage was all sustained and is within the coverage of the policy aforesaid; that plaintiff has heretofore made demand for payment but that defendant has failed and refused to pay the amount within its policy limits.

V. That plaintiff has complied with all conditions precedent to the filing of this suit required

by the terms of said policy; and in the alternative, if plaintiff be mistaken in his belief that all conditions precedent have been so complied with, then in such event, plaintiff says that defendant through its agents, attorneys, and employees has waived any such provisions of such policy making any one or more item or items a condition precedent to the filing of this suit.

VI. That under the conditions of said policy and endorsement aforesaid, the defendant agreed to pay 10% of the amount of insurance carried to apply to the rental value of the described building occupied by insured, but not to exceed 10% for both, whenever such expenses are occasioned by a loss within the meaning of such policy; that plaintiff sustained such loss within the meaning of such policy in an amount of Six Hundred Ninety & No/100 ($690.00) Dollars."

He prayed for damages in the amount of $7,590.00, with legal interest from December 26, 1961, the date of trial, and with interest from date of judgment at the legal rate.

Defendant entered a general denial and pertinent to this discussion pleaded the exclusion, "tidal wave, high water, or overflow, whether driven by wind or not." The jury found that the house was damaged by wind and wind driven rain; that the value before Carla was $7,400, and the value after was $68.00; that the cost of repair was $7,332, and that the wind made openings and permitted rain and wind driven rain to enter through openings; that the house was uninhabitable and could be reasonably restored in three months; that the increase in household expense was $210; that the damage was caused by tidal wave, high water, overflow or rising water,

and that the cost of repair of such damage was $400, and that plaintiff did not fail to file proof of loss and that the company waived the filing of proof of loss. The court entered judgment for $6,900, the face amount of the policy. Defendant's motions for instructed verdict and for judgment notwithstanding the verdict were overruled and it perfected its appeal and the cause is here on transfer.

Appellant has assigned 26 points of error. Point 1 is to the effect that the court erred in failing to sustain its motion for judgment notwithstanding the verdict, and in entering judgment for plaintiff based on the jury finding to special issue No. 3, because there is no evidence to support the jury's answer that $7,332.00 is the "actual and necessary cost of repairing plaintiff's dwelling * * * damaged solely, if any, as a direct result of the wind and wind driven rain * *. * with material of like kind and quality."; Point 2 assails the insufficiency of the evidence to support the jury's answer to issue No. 3, and that the answer is so against the great weight and preponderance of the evidence and is the result of bias and prejudice so as to be clearly wrong; Points 3 and 4 are to the effect that there is no evidence to sustain the jury's answer to issue 5 to the effect that the actual cash value of plaintiff's house just after Hurricane Carla was $68.00, and that its motion for judgment notwithstanding the verdict of the jury should have been granted, and that the answer to issue 5 is so against the great weight and preponderance of the evidence as to be clearly wrong and is the result of bias and prejudice; Points 5 and 6 are to the effect that there is no evidence that the actual cost of repairing the damage done by "tidal wave, highwater, overflow or rising water" was $400/7332 of the damage, or that damage covered by the policy constituted the building a total loss, and that the evidence is insufficient to support the judgment for total loss, and that it is against the great weight and preponderance of the evidence; Point 7, in refusing its special issue No.

21, which was: "From a preponderance of the evidence what do you find to be the percentage of loss and damage to plaintiff's house on the premises in question as a direct result of the winds of Hurricane Carla, based upon 100%? Give your answer in percentage."; Point 8, in refusing defendant's requested issue No. 20, which was: "What do you find from a preponderance of the evidence to be the reasonable and fair cost, if any, to repair or replace plaintiff's house to the condition in which it was just before the occurrence made the basis of this suit, with material of like kind and qualify within a reasonable time after the loss", and the accompanying instruction, "In connection with the above and foregoing issue, in arriving at your answer, you will make allowance for depreciation, if any, and you will not allow for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair. You will likewise not consider or allow anything for damage that was not a direct result of the winds of Hurricane Carla.".

Appellant says that the effect of the foregoing points is that there is no evidence and insufficient evidence that the house in question sustained damages which amounted to repair costs of $7,332 less $400 as a result of damage above the water flood line, or that the house was worth only $68 immediately after Hurricane Carla; that the refusal of defendant's requested issues 20 and 21 enabled the plaintiff to recover judgment based on the most advantageous extreme of two estimates.

We overrule each of the foregoing points for reasons hereinafter stated. Plaintiff's exhibits 1 and 2 relate to the basic fire and windstorm and extended coverage policy and the Physical Loss Form Endorsement. Under Section III of the basic insurance policy, we find:

"CONDITIONS APPLICABLE ONLY TO WINDSTORM, HURRICANE AND HAIL:
Unless specifically named hereon, the company shall not be liable for loss to metal smokestacks (except when securely fastened to walls of a masonry building,) radio or television towers and antennas, windmills, windchargers, outside erected signs or greenhouses, nor for loss caused by (a) blizzard or change in temperature, nor (b) by snowstorm; tidal wave, highwater or overflow, whether driven by wind or nor, unless the wind or hail shall first make an opening in the walls or roof of the described building, and shall be liable only for loss to the interior of the building or the insured property therein, caused immediately by rain entering the building through such openings."

Under the Physical Loss Form Endorsement, plaintiff's exhibit No. 2, we find:

"The provisions of Section I 'Definitions', Section II, 'Special Conditions' and Section III, 'Special Coverage Conditions' of the Texas Standard Policy are each eliminated as to dwelling(s) described in the policy and in lieu thereof the provisions of this form shall apply."

(This language is clear, comprehensive and free from all doubt).

We quote further from Section I of the Physical Loss Form Endorsement:

"COVERAGE: Subject to the provisions of this form and of the policy to which this form is attached including the endorsements thereon, this policy insures against all risks of physical loss to the described dwelling(s), building(s) or structure(s) covered under this form."

(This provision is free from all doubt).

Also from the Physical Loss Form Endorsement, we quote from Section II:

"This policy does not insure against * * * C. Loss by earthquake, surface waters, flood waters, waves tide or tidal wave, high water or overflow

of streams or bodies of water, all whether driven by wind or not, or whether caused by or attributable to earthquake; this exclusion, however, shall not apply to loss by fire or explosion caused by perils excluded in this paragraph, * * *".

Again, we quote from the Physical Loss Form, and from Section III, C.:

"DEDUCTIBLES: * * * C. * * On each separate loss resulting from wind driven rain or hurricane driven rain, there shall be deducted the sum of $50.00 or the sum shown in Line D below, whichever is the greater."

 So far as we have been able to find there is not a Texas case that defines the term: "all risks of physical loss." In Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315, our Supreme Court in a workmen's compensation case discussing loss made the following statement:

"The phrase 'physical structure of the body', as it is used in the statute, must refer to the entire body, not simply to the skeletal structure or to the circulatory system or to the digestive system. It refers to the whole, to the complex of perfectly integrated and interdependent bones, tissues and organs which function together by means of electrical, chemical and mechanical processes in a living, breath'ng, functioning individual. To determine what is meant by 'physical structure of the body', the structure should be considered that of a living person—not as a static, inanimate thing."

By analogy, we are of the view that the term "all risks of physical loss" should not be given a restrictive meaning, and because it would be impossible to define the term "all risks of physical loss" as meaning any damage or harm to the building or structure described as mentioned in the policy of insurance; otherwise, there could be no certainty as to what the coverage was, or as to what the insured was paying for. (The Physical Loss Form Endorsement cost plaintiff in excess of $164.00). In Travelers' Indemnity Co. v. De Witt, Tex.Civ.App., 207 S.W.2d 641 (n.w.h.) we find this statement:

"It is elementary that a policy of insurance, like every contract, must be construed as a whole, giving reasonable effect to and harmonizing all of its parts. 24 Tex.Jur. 701. It is also a well settled rule of construction that, 'contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense. The rule that a policy of insurance should be construed favorably to the insured does not require that words and expressions be given a meaning so restrictive as to deprive them of their ordinary signification. It is not permissible to impute an unusual meaning to language in a contract of insurance, any more than to language or any other contract, unless it is shown by evidence that the language used has acquired by custom or otherwise a peculiar meaning distinct from the popular sense of such terms.' "

See also United Service Automobile Ass'n v. Miles, 139 Tex. 138, 161 S.W.2d 1048. See also 88 A.L.R.2d 1122–25–27. As we understand the policy, we think the exclusion provided for under Section III of the basic insurance policy is applicable no longer whenever there is a physical loss endorsement form attached to the basic policy. That is the exact situation here. We are of the further view that the appellant's defenses were restricted by the physical loss form endorsement to those contained in Section II, C., heretofore quoted. This exclusion clause does not exclude loss or damage caused by wind and wind driven rain, nor does such clause require that the wind or hail shall first make an opening in the roof or walls or

limit the appellant's liability to loss caused immediately by rain entering the building through such openings as contended by the appellant. The provisions of Section III(a) of the basic insurance policy, making liability depend upon the wind or hail creating openings in the roof or walls of the building and limiting liability to damage caused by rain entering through such openings, being wholly and totally omitted from the provisions of the physical loss form endorsement.

But, appellant contends that certain issues submitted by the trial court did not segregate the damage and did not bring the loss within the coverage of the policy, and that it submitted only ultimate issues. We are not in accord with this view. We think that the court submitted this cause in accord with the provisions of the physical loss form endorsement, and that the evidence is ample to sustain each jury finding thereon. As we understand appellant, it contends that the physical loss form endorsement does not cover damage or loss occasioned by wind or wind driven rain standing alone. We are not in accord with this view. This matter was covered by the Court's charge in issues Nos. 1, 2, 3, 7, 8 and 9, and the jury's answers thereto are supported by ample evidence. The physical loss form endorsement upon which this action is grounded is certainly broad and comprehensive and free from all doubt. We have previously set it out. It is our view that our Texas courts have consistently ruled that, under the basic policy, plaintiff has the burden of proving that the loss fell within the coverage of the policy and not within the provisions of the exclusions of the policy whenever the affirmative defense of the exclusion is asserted. The rule in Texas is that where a loss is occasioned by a risk which is within the coverage of the policy, and a risk which is within the exclusion of the policy, that plaintiff may recover if plaintiff is able to segregate the damages occasioned by the covered risk from the damage occasioned by the excluded risk within

the exclusion of his policy. (This the jury did). See Franklin Fire Ins. Co. of Philadelphia v. Smith, Tex.Civ.App., 103 S.W.2d 470; 93 A.L.R.2d 145, p. 165, 166–171. We also think that the rule in Texas is to the effect that where a loss occurs under a standard fire, windstorm and extended coverage policy within the coverage of the policy, and such loss is contributed to by an excluded risk of the policy, the plaintiff may, nevertheless, recover if plaintiff proves that the dominant efficient cause of the loss is the covered risk. See Providence Washington Ins. Co. v. Cooper, Tex.Civ. App., 223 S.W.2d 329 (n. r. e.). See also Berglund v. Hardware Dealers Mut. Fire Ins. Co., Tex.Civ.App., 381 S.W.2d 631. We are of the view that the burden of proving loss within the coverage of the policy and the amount of the loss excluded from the coverage of the policy, was placed upon the appellee by the court's charge, and that appellee carried such burden. We are of the further view that all the evidence in this case preponderates to the effect that the dominant and efficient cause of the damage to plaintiff's dwelling, unbroken by any new and independent cause, was Hurricane Carla. That leads us to say that each of appellant's points from 1 to 8 inclusive are overruled.

Point of Error 9 is to the effect that the Court erred in overruling motion for judgment notwithstanding the verdict because plaintiff failed to prove damages which were a direct result of the winds of Hurricane Carla and failed to segregate damages which were caused or contributed to by pleaded exclusions to coverage; Point 10 is to the effect that the Court should have granted its motion for new trial because the Court's charge to the jury failed to segregate damage within the policy coverage and damage excluded by the policy, and there remained no proper basis for entering judgment; Point 11 is to the effect that the Court failed to sustain its objection to Special Issue 1, because it pointed out to the Court that the issue was multifarious, calculated to mislead the jury, and would not

bring any claimed loss within the insuring clauses of the contract; Point 12 is substantially to the same effect as issue 2 of the Court's charge; Point 13 is to the effect that the Court failed to sustain its objections to Issue 11, and conditionally submitted Issue 12 where it pointed out the submission was not within the terms of the policy and requested the addition of the words "whether driven by wind or not."; Point 14 complains of the failure of the Court to submit its requested Issue 13, which is: "Do you find from a preponderance of the evidence that the winds of Hurricane Carla, on or about September 11, 1961, did directly cause loss and damage to the house on the property in question?"; Point 15 complains of the failure of the Court to submit its requested Issue 14, which is: 'Do you find from a preponderance of the evidence that openings in the walls and roof of the house in question were not made by the direct action of the winds of Hurricane Carla?" and the conditionally submitted requested Issues Nos. 15 and 16, which inquired as to whether rain did not enter through such openings, and if such rain did not cause damage. Point 16 complains of the court's failure to submit its requested issue 17, which is: "Do you find from a preponderance of the evidence that rain water, whether driven by wind or not, directly caused damage to plaintiff's house on the premises in question on or about September 11, 1961, by entering openings in such house, if any, which existed before hurricane Carla?" Point 17 complains of the court's failure to give its Issue No. 20, and the accompanying instruction, which is: "What do you find from a preponderance of the evidence to be the reasonable fair cost, if any, to repair or replace plaintiff's house to the condition in which it was just before the occurrence made the basis of this suit, with material of like kind and quality within a reasonable time after the loss? In connection with the above and foregoing issue, in arriving at your answer, you will make allowance for depreciation, if any, and you will not allow for any increased cost of repair or recon-

struction by reason of any ordinance or law regulating construction or repair. You will likewise not consider or allow anything for damage that was not a direct result of the winds of Hurricane Carla." Point 18 complains of the court's failure to give its requested Issue No. 21, which is: "From a preponderance of the evidence what do you find to be the percentage of loss and damage to plaintiff's house on the premises in question as a direct result of the winds of Hurricane Carla, based upon 100%?"

 We have given considerable attention to each of the foregoing requested special issues, and we are of the view that none of them present reversible error. We are of the further view that the court's charge submitted all of the controverted issues applicable to the defenses asserted by the defendant under the loss form endorsement. See Rule 279, Texas Rules of Civil Procedure; also Texas Pacific Railway Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280; Smith and Conklin Bros. v. Griffith, 153 Tex. 341, 268 S.W.2d 124, and cases there cited. Accordingly, points from 9 to 18 inclusive are overruled.

 Appellant's Point 19 is to the effect that the court erred in overruling its motion for judgment notwithstanding the verdict, because there is no evidence that wind and wind driven rains entered the building within the terms of the policy coverage, and 20, because there is insufficient evidence to support the jury finding to that effect, and that such finding is against the great weight and preponderance of the evidence and is the result of bias and prejudice; Point 21 is to the effect that there is no evidence that the wind of Hurricane Carla made openings in the walls and roof of the plaintiff's dwelling; Point 22 is to the effect that there is insufficient evidence to support the jury finding that Hurricane Carla made openings in the walls and roof of the plaintiff's dwelling, and that this finding is against the great weight and preponderance of the evidence, and is the result of bias and prejudice; Point 23 is to

the effect that there is insufficient evidence to support the jury finding that $7332.00 is the actual and necessary cost of repairing plaintiff's dwelling damaged solely as the result of wind and wind driven rain, and that this finding is against the great weight and preponderance of the evidence, and is the result of bias and prejudice; Point 24 is to the effect that there is insufficient evidence to support the jury finding that the dwelling was rendered uninhabitable as a direct result of the wind and wind driven rain of Hurricane Carla, and that such finding is against the great weight and preponderance of the evidence as to be wrong, and the result of bias and prejudice. We overrule each of these contentions for reasons hereinafter briefly stated. First of all, we see nothing to sustain appellant's contention that the jury verdict was a result of bias and prejudice. No effort was made by appellant to change the venue of this cause on the ground that bias and prejudice was so great in this community that it could not obtain a fair and impartial trial. Moreover the Court granted appellant full opportunity to examine the jury panel, and under the record before us, we find no evidence whatsoever to sustain this contention of appellant. Plaintiff's suit was based on a written contract between the parties, and plaintiff was asking for relief under this contract. We are of the view that appellant's contention of bias and prejudice is without merit. The evidence tendered upon the issue of damage covers many pages, and necessarily we cannot quote it. It is our duty to consider the evidence and inferences to be drawn therefrom in the light most favorable to the party obtaining the verdict. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. The witness Wolf testified in part to the effect that the total cost of repairing the dwelling would be the sum of $7832.00, and further that the water standing in the dwelling added damage to the floor but not to the structure, and that such damage to the floor was at the highest possible estimate of his estimate to repair the dwelling. Under Mr. Wolf's testimony the jury could have answered Issue No.

3 in the Court's charge that the cost of repair would be $7362.08. The law is well settled that jurors may accept some parts of the witness's testimony and reject other parts, when the testimony is inconsistent and contradictory. See Hood v. Texas Indemnity Ins. Co., 146 Tex. 570, 209 S.W.2d 345, Supreme Court. See also Implement Dealers Mutual Insurance Company v. Cox, Tex.Civ.App., 376 S.W.2d 384 (n. w. h.). See also 14 Baylor Law Review 371, p. 372. From the quantum of proof tendered in the trial of this case, we are of the view that it is ample to sustain the jury findings in answer to each of the issues submitted by the Court, and that such findings are not against the great weight and preponderance of the evidence. Accordingly, points 19 through 24 are overruled.

We have considered points 25 and 26, and we are of the view that each should be overruled. Each of appellant's points is overruled. Appellee's counter-point one is overruled.

Accordingly, the judgment of the Trial Court is affirmed.