# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 11, 2022

Lyle W. Cayce
Clerk

No. 21-11047

Bradford Realty Services, Incorporated,

*Plaintiff—Appellant*,

*versus*

Hartford Fire Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-1659

Before Willett, Engelhardt, and Wilson, *Circuit Judges*.

Per Curiam:*

This case turns on the difference between "rain" and "water." Plaintiff-Appellant Bradford Realty Services, Inc. ("Bradford") manages a building (the "Property"). Defendant-Appellee Hartford Fire Insurance Company ("Hartford") issued an insurance policy to cover losses to the Property (the "Policy"). The Policy provides coverage for losses "caused by

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-11047

or resulting from water that backs up from a sewer or drain." It also excludes coverage for damage caused by rain unless the Property "first sustains damage by a covered Cause of Loss to its roof or walls through which the rain . . . enters."

In September 2018, a heavy rainstorm swept over the Property, resulting in some form of liquid dihydrogen monoxide pooling on the roof. Drains that would otherwise remove that substance were clogged, so it remained. Aquatic mayhem ensued as a leak permitted the invidious-yet-indeterminate substance to enter the Property's interior and cause damage. Bradford filed an insurance claim with Hartford to cover repairs to the Property. Hartford denied coverage, claiming that because the damage was caused by rain that did not enter the building through damage caused by the storm, it fell into the Policy's exclusion for damage caused by rain.

Thirsting for relief, Bradford sued in the United States District Court for the Northern District of Texas, invoking diversity jurisdiction. It argued that the Policy's rain exclusion did not apply and, in addition, that the drain backup coverage provision covered the loss. After discovery and cross-motions for summary judgment, the district court doused Bradford's hopes by granting Hartford's motion. *Bradford Realty Servs., Inc. v. Hartford Fire Ins. Co.*, No. 3:20-CV-1659-C, 2021 WL 4955911, at *1 (N.D. Tex. Sept. 13, 2021). Bradford appeals, arguing that the district court's holding that the rain exclusion applied, while the drain backup coverage did not, is all wet.[1] We disagree and AFFIRM.

---

[1] Although Bradford initially challenged Hartford's reliance on an engineering report, it appears that the problem was merely crossed wires between the parties as to why Hartford was relying on that report. Thus, Bradford's objection dried up.

No. 21-11047

I

We review the district court's grant of summary judgment de novo and affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). As the district court noted, all material facts have been stipulated to by the parties, so we may resolve this case purely on matters of law. *Bradford Realty Servs.*, 2021 WL 4955911, at *1.

Because this is a diversity case, Texas substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). Under Texas law, the insured bears the burden of establishing coverage. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). If the insured carries its burden, the insurer must "plead and prove" that the insured's loss falls within an exclusion to coverage.[2] *Id.* If the insurer succeeds, the insured must then show that there is an applicable exception to the exclusion that renews coverage. *Id.* Because Bradford and Hartford have stipulated to the material facts required for us to resolve the case, we proceed directly to the analysis.

"When analyzing an insurance contract," Texas courts use "well-established principles of contract construction." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010) (citation omitted). The goal of the exercise "is to determine the contracting parties' intent through the policy's written

---

[2] The rain exclusion is technically a "limitation" but much of the caselaw refers to exclusions, so we characterize it as such to avoid confusion. There is no material difference between the terms for the purposes of this case.

No. 21-11047

language." *Id.* (citations omitted). That analysis is frozen "within the four corners of the policy itself." *Id.* (citation omitted).

Important here, Texas courts do not dilute the meaning of contractual provisions but instead "giv[e] effect to each word, clause and sentence, and avoid making any provision within the policy inoperative." *Id.* (citation omitted); *see Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) (explaining that courts "must give effect to all contractual provisions so that none will be rendered meaningless"). Mere disagreement between the parties "does not create an ambiguity" in the contract's language, as *only* when a provision "is subject to two or more *reasonable* interpretations may it be considered ambiguous." *Page*, 315 S.W.3d at 527 (citations omitted and emphasis added). Whether a contract is ambiguous is a question of law. *Schaefer*, 124 S.W.3d at 157. Thus, when a provision "is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and [the court] construe[s] it as a matter of law." *Id.*

II

Bradford presses two arguments on appeal. First, it argues that the policy's drain backup provision applies. Second, it argues that the rain exclusion does not. Thus, Bradford argues, the district court erred both in granting summary judgment in favor of Hartford and for denying summary judgment in favor of Bradford. Neither argument holds water, rain, or any combination thereof.

A. Drain Backup Coverage

Bradford first argues that because the policy provides coverage for damage caused by water backing up from a drain, and because the parties stipulated that the drains were clogged such that $H_2O$ accumulated on the roof, eventually reaching a "rooftop air handling unit" and leaking inside the building, the damage should be covered. Thus, Bradford argues, even if the

4

rain exclusion applies, the drain backup provision is an exception to that exclusion that renews coverage. Hartford argues this issue under the assumption that Bradford is asserting the drain backup provision as affirmative coverage in the first instance, not as an exception. The result is the same either way.

If the drain backup provision provides coverage in the first instance, it does not apply here. The section of the Policy that includes the drain backup coverage also states that the coverages provided in that section "are added . . . unless otherwise indicated in the Property Choice Schedule of Premises and Coverages or by endorsement to this policy." The rain exclusion is contained within the "Property Choice" portion of the Policy. Further, the subsection that contains the rain exclusion states that the limitations contained therein "apply to all policy forms and endorsements." Thus, the drain backup coverage applies "unless otherwise indicated," and the rain exclusion otherwise indicates.

If the drain backup provision is an exception, it does not apply to the rain exclusion. That much is evident from the case Bradford cites to support its argument, which instead dampens it. *See Hopu, Co. v. N. Ins. Co. of N.Y.*, No. CV H-03-2372, 2005 WL 8165597, at *4 (S.D. Tex. Nov. 22, 2005). In *Hopu*, rain from a tropical storm overflowed the gutters installed on the insured's property, leaked inside, and caused damage. *Id.* at *3. The policy at issue contained a substantially similar rain exclusion and drain coverage provision. *See id.* at *3–4. Like this case, there was no evidence of damage to the walls or roof from the storm. *Id.* at *5. The court held that the drain backup provision did not apply because, although it was an exception, it did not apply to the rain exclusion. *Id.* at *4. That was so because the rain exclusion made clear that the *only* exception to it was when the property "first sustains damage by a Covered Cause of Loss *to its roof or walls*." *Id.* (internal quotation marks omitted). Losses caused by something other than

covered damage to the property's roof or walls, therefore, were "irrelevant" to the application of the rainwater exclusion. *Id.* Since the drain backup coverage provision did not apply by virtue of damage to the property's roof or walls, it was therefore inapplicable to the loss. *Id.*

So too here. The rain exclusion's only listed exceptions are unambiguous and only concern losses that result from covered damage "to [the Property's] roof or walls through which the rain . . . enters" and damage "caused by . . . thawing of snow, sleet or ice on the building or structure." Bradford has stipulated that the cause of undefined liquid entering the Property was only that "the roof drains were clogged with debris" which allowed the liquid to pool and leak into the Property through an air handling unit. Thus, Bradford cannot establish that the drain backup provision fits within either of the two exceptions to the rain exclusion, and this argument fails.

## B. Rain Exclusion

That brings us to the question of whether the rain exclusion applies. Specifically, we consider whether pooled rainwater is "rain" or "water" under the insurance contract between Bradford and Hartford, applying Texas principles of contractual interpretation.

We note that there is no reservoir of precedent to guide us. A sprinkling of Texas appellate caselaw deals with insurance policies that have a substantially similar rain exclusion provision, but not with the precise issue before us. *See, e.g.*, *Tex. Windstorm Ins. Ass'n v. James*, No. 13-17-00401-CV, 2020 WL 5051577, at *15–16 (Tex. App.-Corpus Christi Aug. 20, 2020, pet. denied) (there was sufficient evidence to support a finding that rain entered through an opening created by wind); *Davis v. Nat'l Lloyds Ins. Co.*, 484 S.W.3d 459, 463 (Tex. App.-Houston [1st Dist.] 2015, pet. denied) (damage calculation dispute); *U.S. Fire Ins. Co. v. Matchoolian*, 583 S.W.2d 692, 694

No. 21-11047

(Tex. Civ. App.-Houston [14th Dist.] 1979, writ ref'd n.r.e.) (insured failed to delineate between causes of damage); *Hartford Fire Ins. Co. v. Christianson*, 395 S.W.2d 53, 60 (Tex. Civ. App.-Corpus Christi 1965, writ ref'd n.r.e.) (house was completely destroyed by Hurricane Carla, so there was no evidence that rain entered the house when it was intact).

Thus, we cannot find any guidance from either the Texas Supreme Court or Texas intermediate courts on this issue, nor do the parties cite any.[3] In these situations, we make an "*Erie* guess," predicting what we *think* the Texas Supreme Court would do with this case. *Jiao v. Xu*, 28 F.4th 591, 599 (5th Cir. 2022) (citation omitted).

Bradford argues that water is only "rain" when it is actively falling from the sky. Once rain hits a roof, it becomes water and, as a result, a rain exclusion cannot apply to deny coverage for damage it causes. In support, Bradford cites a Supreme Court of Wyoming case wherein the court held that a policy provision denying coverage for damage caused by "surface water" applied to bar recovery when floodwater from a rain-and-hailstorm inundated the insured's basement. *State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 764–65, 772 (Wyo. 1988). But *Paulson* defined surface water as water that had "diffused over the surface of the *ground*," so its reasoning is inapplicable here where the water pooled on a rooftop. *See State v. Hiber*, 48 Wyo. 172, 44 P.2d 1005, 1008 (1935) (citations omitted and emphasis added) (adopted as the definition of surface water by *Paulson*, 756 P.2d at 772). Hartford and the district court rely on a case from the Supreme Court of Iowa, which reasoned

---

[3] Although the Texas Supreme Court is the state's highest judicial authority and, therefore, the only court that can say for certain what Texas law *is*, we often look to Texas intermediate courts for "the strongest indicator of what [the Texas Supreme Court] *would* do, absent a compelling reason to believe that the [Texas Supreme Court] would reject the lower courts' reasoning." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780–81 (5th Cir. 2016) (emphasis added).

No. 21-11047

that rain exclusions would be meaningless if rain became water upon landing because water only damages property "after it strikes a surface." *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 237 (Iowa 2015).

The Texas Supreme Court would likely hold that the damage in this case was caused by rain. To hold otherwise would render the rain exclusion meaningless. Rain does not damage anything when it is in mid-air, as it only damages something once it lands and soaks, splashes, or otherwise touches that thing. *See id.* In other words, if rain becomes water on contact with a surface, then the rain exclusion excludes nothing. Because Texas law is awash in admonitions to give meaning to every contractual provision, we give meaning to the rain exclusion by holding that it applies to the rainwater that pooled on the roof of the Property and caused damage. *See Page*, 315 S.W.3d at 527; *Schaefer*, 124 S.W.3d at 157.

### III

We hold that the Policy's drain backup provision does not provide coverage because it does not fall within either of the enumerated exceptions to the rain exclusion. We likewise hold that the water that caused damage here falls within the rain exclusion. To do otherwise would render the exclusion meaningless and water down Texas' principle of contractual interpretation that each provision be given meaning. Thus, we AFFIRM.